BARNARD v. LANCASHIRE INS. CO. OF MANCHESTER, ENGLAND, et al.

LANCASHIRE INS. CO. OF MANCHESTER, ENGLAND, et al. v. BARNARD.

(Circuit Court of Appeals, Eighth Circuit. March 26, 1900.)

Nos. 1,262, 1,263.

1. INSURANCE—AGREEMENT FOR ARBITRATION—SETTING ASIDE AWARD.
    The award of arbitrators appointed, in accordance with an agreement in a policy of insurance, to appraise a loss thereunder, is supported by every reasonable intendment and presumption, and will not be vacated unless clearly shown that it was made without authority, or was the result of fraud or mistake, or of the misfeasance or malfeasance, of the appraisers.

2. SAME.
    Where there are two methods by which the result may have been reached by arbitrators in making an award fixing the amount of a loss under an insurance policy, one of which was legal and authorized, and the other not, the presumption is that the legal method was followed.

3. SAME.
    The fact that an award made by arbitrators appointed under a provision of an insurance policy to appraise the amount of a loss thereunder was not made under oath, as provided in the policy, affords no ground for a suit in equity to set aside the award.

Appeals from the Circuit Court of the United States for the District of Nebraska.

Frank H. Gaines (Edward R. Duffie and James E. Kelby, on the brief), for Lura D. Barnard.

Charles J. Greene and Ralph W. Breckenridge, for Lancashire Ins. Co. and others.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. These cases are appeals from a decree which set aside the award of appraisers made under the usual provision in policies of fire insurance for the appraisal of the damages from fire. The insured, Lura D. Barnard, appeals from the decree avoiding the award, and the insurance companies appeal from the decree because it does not perpetually enjoin the prosecution of actions at law which had been brought upon the award.

An agreement of appraisal is a contract. Appraisers who make an award under such an agreement are presumed to have acted in accordance with the law and the terms of the contract, and the burden of proof is on those who attack their award to establish the contrary by convincing evidence. Every reasonable intendment and presumption is in favor of the award, and it should not be vacated unless it clearly appears that it was made without authority, or was the result of fraud or mistake, or of the misfeasance or malfeasance of the appraisers. Karthaus v. Ferrer, 1 Pet. 222, 228, 7 L. Ed. 121; Hartford Fire Ins. Co. v. Bonner Mercantile Co., 15 U. S. App. 134, 140, 5 C. C. A. 524, 528, 56 Fed. 378, 382; Blood v. Shine, 2 Fla. 127, 132; Insurance Co. v. Goehring, 99 Pa. St. 16, 17; Tank v. Rohweder (Iowa) 67 N. W. 106, 107; McDonald v. Arnout, 14 Ill. 58, 62; Golder v. Mueller, 22 Ill. App. 527, 528. The award in the case in hand is valid on its face, and the first question for consideration is whether or not the insurance companies have fairly shown by a preponderance of evidence that it was made without authority, or that it was the result of misfeasance or malfeasance on the part of the appraisers. The eight insurance companies and the insured were parties to the agreement of appraisal, and the insurance companies brought this action in equity to avoid the award and to enjoin actions at law which the insured had brought upon it. The legal effect of the various clauses for appraisal in the eight policies, so far as they relate to the main question at issue in these cases, is the same. One of them is:

"In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire. The appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire: and the award in writing of any two shall determine the amount of such loss."

Two appraisers were chosen under these clauses, one by the insurance companies and the other by the insured. These appraisers chose an umpire, and, after consideration, an award was made, which was signed by the umpire and one of the appraisers, to the effect

that the sound value of the insured property was $21,031.33 and the loss and damage was $19,681. This award was avoided at the suit of the insurance companies on the ground that the umpire failed to confine his decision to a determination of the differences between the appraisers, but extended it, without authority, to the determination of matters on which the appraisers had agreed. Conceding, but not deciding, that the authority of the umpire was limited to a determination of the differences between the two appraisers, this record has been searched in vain for evidence that he has exceeded his authority. No witness has testified that he did so, and the only facts bearing upon this issue which the record discloses are these: The property insured was a four-story brick hotel building known as the "New Peoria House." After the two appraisers were selected, they chose the umpire, and then proceeded to examine the insured property, and estimate its sound value and its damage. They agreed upon the sound value of the property when first constructed, but did not agree upon the depreciation on account of its age. They submitted this question of difference to the umpire. He decided it, and the appraisers thereupon agreed that the sound value of the property was $21,031.33. They disagreed upon the question whether or not the building was susceptible to repair. They submitted this question of difference to the umpire, and he decided that it was. They then agreed upon the damage to about 25 items, which they specified, and found it to be $5,604.53, but differed as to the damage to the remainder of the property, which consisted of the brick walls, floors, and interior of the building insured. One appraiser thought this damage was $2,300 and the other believed it to be $12,127.60. Thereupon they certified to the umpire the fact of this disagreement, and at the same time gave him a list of the items upon which they had agreed, and the agreed damage upon those items. At this time the appraisers had finished the examination of the property; and the damage to the items upon which they had agreed, together with the damage upon the items concerning which they had disagreed and had made their certificate to the umpire, constituted all the damages to the property. The umpire's answer was that he did not agree with either of the appraisers in their figures, but held that the loss and damage suffered by the insured was $19,681. Thereupon the award was made and signed by the umpire and one of the appraisers. It will be noticed that the amount agreed upon by the appraisers as the sound value of the property is adopted in the award, and that there were two methods by which the umpire may have arrived at his conclusion that the entire loss and damage was $19,681. He may have taken the amount agreed upon as the damage to the items specified by the appraisers, $5,604.53, and have found the damage to the items upon which they disagreed to be $14,076.47 and have added that to the $5,604.53, thus obtaining $19,681. On the other hand, he may have considered and determined for himself the damage to all the items, including those upon which the appraisers agreed, and in this way he may have found the $19,681. If he adopted the former course, he acted strictly within the limits of his authority, even upon the theory of counsel for the insurance companies.

If he adopted the latter course, he exceeded that authority on their theory. There is no evidence in the record to show by which method he arrived at his conclusion. Where there are two ways by means of which a result may have been attained, one lawful and authorized, the other illegal and without authority, the presumption always is that the legal method was followed. The result is that the legal presumption in support of the award has not been overcome by the testimony produced by the insurance companies, and it must stand.

The argument and authorities of counsel for the companies to the effect that an award that is in part good and in part bad cannot be sustained where it is impossible to separate the lawful from the illegal part of it, have not been overlooked, but they have no application to the case at bar, because the legal presumption is that the umpire proceeded within the limits of his authority, and that all his acts were legal and valid; and this presumption has not been overcome by the evidence, so that there is nothing to show that any part of this award or of the proceedings which led to it was either unauthorized, insufficient, or illegal.

It is contended that the decree should be sustained so far as it relates to the interest of the Traders' Insurance Company, because its policy provided that the award should be made in writing, and under oath, and this award was made without oath. This, however, is no ground for relief in equity. If the award is illegal or void because not made under oath, that is a perfect defense to the action at law upon it, and can be presented by answer in that action. The decree below must be reversed, with costs against the insurance companies in each case, and the cases must be remanded to the court below, with directions to dismiss the bill.