WILLIAMSON v. LIVERPOOL & LONDON & GLOBE INS. CO.

(Circuit Court of Appeals, Eighth Circuit. April 20, 1903.)

No. 1,825.

1. INSURANCE—APPRAISERS MAY FIND TOTAL LOSS.

Under a policy of insurance which provides that in the event of dis-
agreement as to the amount of loss the same shall be ascertained by
two appraisers and an umpire, and that the appraisers shall estimate
and appraise the loss, stating separately sound value and damage, shall
submit their differences to the umpire, and the award of any two shall
determine the amount of the loss, the appraisers are empowered to de-
termine whether or not the loss is total, as well as to determine its
amount in case it is partial.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Western
District of Missouri.

See 105 Fed. 31.

J. D. McCue and L. C. Boyle (William Warner, on brief), for ap-
pellant.

M. A. Fyke and Ed. E. Yates, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal from a decree which
avoided the award of appraisers appointed to ascertain the loss by

fire under policies of insurance issued by the Liverpool & London & Globe Insurance Company, the appellee.

An award of arbitrators appointed to appraise a loss under an insurance policy is supported by every reasonable intendment and presumption, and will not be vacated unless it is clearly shown that it was made without authority, or was the result of fraud or mistake, or of the misfeasance or malfeasance of the appraisers. Barnard v. Lancashire Ins. Co., 101 Fed. 36, 41 C. C. A. 170. There was no evidence that the award in this case was secured by fraud, or was the result of the misfeasance or malfeasance of any of the appraisers. The decree avoiding it rests upon the sole ground that the appraisers exceeded their authority, in that they determined the loss to be total when they were only authorized to find it to be partial.

The provisions of the policy pertinent to this question are these:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided."

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of such loss."

The parties to the policies disagreed as to the amount of the loss, appointed two appraisers, and these appraisers selected an umpire. The appraisers proceeded to ascertain the amount of the loss. The first question which presented itself was whether or not the portions of the walls of the insured buildings which were standing could be used in replacing the burned structures. One of the appraisers was of the opinion that they could be used; the other believed that they could not be, because they stood upon made ground, which had been so softened by the water which had been thrown upon it in extinguishing the fire that it would not sustain the weight of the replaced buildings. One of the appraisers, therefore, insisted that the basis of the estimate of the loss should be the amount necessary to repair the buildings as they then stood; the other maintained that the walls and foundations must be taken out and new buildings constructed upon solid foundations, using only what old materials were available for that purpose. This was a basic difference, and they could not proceed to determine the loss until that difference was settled. They therefore referred it to the umpire, and he determined that the buildings were so badly damaged that they could not be safely repaired, and that it was necessary to lay new foundations and construct new buildings in order to restore to the insured the property that had been lost by the fire. Thereupon the appraisers proceeded to determine the amount of the loss, one upon the basis approved by the umpire, and

the other upon the basis of repairing the buildings with the use of the damaged foundations and walls. They necessarily reached different results. These were submitted to the umpire, and he again decided that the true basis upon which to estimate the loss was the cost of the construction of new buildings of the character of those destroyed, and that the cost of reconstruction estimated upon this basis was the true amount of the loss. Thereupon the appraiser with whom he agreed and the umpire signed and delivered an award to the effect that they had determined the sound value of the property insured to be $23,547, "and the loss and damage to be total, as in fact the buildings are totally destroyed, and the remaining walls must be taken down to reconstruct; the cost of removing all other remaining materials as is necessary is fully equal to the value thereof." The other appraiser refused to sign this award, and the court below set it aside upon the ground that the appraisers had no authority to determine whether or not the loss was total, but were limited to determining the cost of replacing the property in its condition before the fire with the aid of the damaged walls and foundations. But the policy grants the power and determines the extent of the authority of the appraisers. It provides that in the event of disagreement as to the amount of the loss the appraisers shall estimate and appraise the loss. If the insured claimed that the loss was total, and the insurer insisted that it was but 90 per cent. of the value of the property insured, there would be a disagreement between them as to the amount of the loss. If appraisers were then appointed, it would be their duty to estimate and appraise the loss. If the appraisers were of the opinion that the loss was 100 per cent., it would be their duty to so find and award. If one of them was of the opinion that it was less than 100 per cent., while the other believed it to be total, it would be their duty to submit this difference to the umpire, who would be authorized to settle it. There is no limitation of the authority of the appraisers to a determination of 50 per cent. or 90 per cent. or 99 per cent. or any other part of the loss. The policy authorizes them to determine the entire loss, and, if that loss was equal to the entire value of the property insured at the time of the fire, it necessarily authorized them to find that the loss was total. The agreement of submission to arbitration under which the award was made confirms this view. It contains this provision:

"It is further expressly understood and agreed that, in determining the sound value and the loss or damage upon the property hereinbefore mentioned, the said appraisers are to make an estimate of the total cash cost of replacing or repairing the same or the actual cash value thereof at and immediately preceding the time of the fire, and in case of depreciation of the property from use, age, condition, location, or otherwise a proper deduction shall be made therefor."

It will be noticed that the appraisers were to determine the sound value and the loss or damage; that is to say, if the property was entirely destroyed they were to determine the loss, and if it was partially destroyed the damage. Farther on the stipulation provides that they are to make an estimate "of the actual cash cost of replacing or repairing the same, or the actual cash value thereof at and immediately pre-

ceding the time of the fire"·; that is to say, they were to find the cost of replacing or repairing if the loss was partial, and the actual cash value immediately preceding the fire if it was total.

Our attention is challenged to this provision of the agreement of submission:

"It is expressly understood that this agreement and appraisement is for the purpose of ascertaining and fixing the amount of sound value and loss and damage only to the property hereinafter described, and shall not determine, waive, or invalidate any other right or rights of either party to this agreement."

But the right to ascertain the amount of the loss, whether total or partial, was not one of the other rights of either of the parties to the agreement after they signed the contract of submission, because, by the terms of the policy and by the provisions of that contract, they agreed that these appraisers should determine both the sound value and the loss, whether that loss was total or partial.

Our conclusion is that an insurance policy which authorizes the appraisers, in case of a disagreement as to the amount of loss, to estimate and appraise the loss, empowers them to determine whether or not the loss is total, as well as to determine what the amount of the loss is in case they find it to be partial. Adams v. Bowery Fire Ins. Co., 85 Iowa, 11, 51 N. W. 1149.

Counsel for the appellee invokes the rule that under an appraisement of this nature the umpire may pass upon matters of difference between the appraisers only, and argues that in the case at bar the umpire exceeded his authority. But a careful perusal of the testimony convinces that the umpire did not exceed the limits of his powers in the case in hand. There were two matters of difference between the appraisers which were fundamental. One was whether or not the walls and foundations of the old buildings could be safely used to construct the new ones, and this question was submitted to and decided by the umpire in the inception of the investigation. The other matter of difference was conditioned by the first. It was whether the cost of replacing the improvements in as good a condition as they were before the fire was the cost estimated on the basis of laying new foundations and building new walls, or upon the basis of using the old foundations and walls and repairing them, and this question was submitted to the umpire and decided by him. He agreed with the appraiser, who held that new foundations and walls must be constructed, and this finding led inevitably to the conclusion that the buildings were a total loss, because it would cost the entire amount of their cash value immediately preceding the fire and more to construct improvements like them. The umpire did not act independently, but confined himself to deciding the differences between the two appraisers, and the award must be sustained.

The decree below is accordingly reversed, and the case is remanded to the Circuit Court, with instructions to dismiss the bill.