## PHŒNIX INS. CO. v. EVERFRESH FOOD CO.

(Circuit Court of Appeals, Eighth Circuit. October 29, 1923.)

### No. 6341.

1. **Insurance ⟨⟩574(1)—Award of appraisers of loss presumptively correct.**

Every reasonable intendment and presumption is in favor of an award of appraisers selected to determine the value of property lost, and it should not be vacated unless it clearly appears that it was made without authority or was the result of fraud or mistake or of the misfeasance or malfeasance of the appraisers.

2. **Insurance ⟨⟩572—Appraisers act ministerially and not judicially.**

Appraisers appointed under the terms of a policy to determine the amount of a loss, where the property destroyed is definitely known and has a market value, and no question of fact is in dispute, except as to such value, do not act as arbitrators, nor judicially, but ministerially. They are selected as experts and may use their own judgment as to how they will proceed, may act on their own knowledge, may make appro-

priate inquiries from reliable sources, may or may not take evidence, and may give to evidence taken the weight to which they think it entitled.

Appeal from the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Suit in equity by the Everfresh Food Company against the Phœnix Insurance Company. Decree for complainant, and defendant appeals. Reversed.

P. T. Farnsworth, Jr., of Salt Lake City, Utah (Waldemar Van Cott, of Salt Lake City, Utah, on the brief), for appellant.

Alfred W. Agee, of Ogden, Utah (James H. De Vine, J. A. Howell, D. L. Stine, and R. C. Gwilliam, all of Ogden, Utah, on the brief), for appellee.

Before STONE and LEWIS, Circuit Judges, and KENNEDY, District Judge.

LEWIS, Circuit Judge. This is an appeal from a decree setting aside an appraisement of loss sustained by appellee on manufactured products and supplies destroyed by fire in the plant or factory of appellee at Ogden, Utah, where it was engaged in dehydrating fruits and vegetables to be put upon the market. The plant and its contents were totally destroyed in the fire. Appellee carried insurance in several companies. An agreement was reached between them and it as to the amount of loss sustained on the machinery and buildings, but they could not agree as to the manufactured goods and supplies on hand used for packing. Thereupon the parties, in compliance with a provision in the policies, appointed two appraisers, one each, and they an umpire, to estimate and appraise the loss upon the stock of fresh and evaporated fruits and vegetables and other merchandise, supplies and material on hand. The umpire was to act only in matters of difference between the two appraisers. It was required that the appraisal should state separately the sound value of the property destroyed and the loss sustained, and that the award in writing of any two should determine the amount of such loss and be binding upon the parties. A formal written agreement for submission to the appraisers, in compliance with the terms of the policies, was entered into. This agreement provided, among other things, that the appraisers in determining the sound value and loss should estimate the actual cash value of the property at and immediately preceding the time of the fire, and in case of depreciation of the property from use, age, condition, location or otherwise a proper deduction should be made therefor. There was no provision or requirement as to how the appraisers should proceed to ascertain the loss—none for calling witnesses or hearing the parties. The oath taken by the appraisers and set out in the complaint required them to make a true, just and conscientious award of the loss and damage according to the best of their knowledge, skill and judgment. The insurance companies appointed Mr. Driffield, who had had experience in adjusting fire losses, and appellee appointed Mr. Hall, who was general manager of the Utah Packing Corporation of Ogden, and in its letter notifying the companies of his appointment it said:

"Mr. Hall is in the food packing business and familiar with the character of the goods lost by us and with the circumstances surrounding them, which will enable him to pass upon their value, and we are confident that we can say with absolute certainty that Mr. Hall will act as fairly and impartially for all parties concerned as any appraiser that we could choose."

These two selected as umpire J. B. Dunn, who was in the employ of Kahn Brothers Company, wholesale grocers at Salt Lake City. Mr. Dunn had had many years' experience as buyer for that company, and had some knowledge of the character of appellee's products and the market therefor. When the appraisers met at Ogden, and before they entered upon their investigation, Mr. Parker, who represented appellee and had been with it as its general manager for several years, learned that Mr. Driffield had received from the insurance companies a letter or paper purporting to show what property had been consumed, and containing also notations as to values. It was said to have been taken from the insured's books. Mr. Parker told Mr. Driffield that he preferred that the appraisers would not use any documents or papers that they had received from the insurance companies, but that they should get such information from the books and records of the insured, which he would furnish them. That was assented to and Mr. Parker invited them to his office to examine the books. He went over the books with Mr. Driffield on more than one occasion, and turned over to him the books and also inventories of the stock previously made. He explained to Mr. Driffield that the books showed the kinds and amount of goods on hand and their cost, both those that had been manufactured from fruits and vegetables and the other merchandise, supplies and material on hand at the time of the fire. The books did disclose the different kinds and quantities of manufactured fruits and vegetables, the dates of manufacture, previous sales from the stock and sale prices therefor. The fire occurred June 27, 1919, and most all of the food products destroyed had been on hand since the season of 1917. The different kinds and quantities of property destroyed by the fire, their cost price and dates of manufacture, as shown by the books of the insured to have been on hand at the time the fire occurred were accepted by the appraisers, and there was no dispute or difference, and there has been none between the insured and insurers in that regard.

The appraisement made and signed by the two appraisers, and also by the umpire, found the sound value of the property to be $13,237.68 and the loss to be the same amount. Thereupon the insured refused a tender of that amount and brought this suit to cancel and annul the appraisement, and obtained a decree accordingly.

The grounds of complaint against the appraisement were two, first, fraudulent conduct on the part of insurers in appointing Driffield and fraudulent purpose and conduct on the part of Driffield in acting as an appraiser; and, secondly, misconduct by the appraisers in not giving Parker an opportunity to be heard before them, which he requested, as the insured alleged. The court below, after hearing the testimony, found:

"The charges of fraud contained in the complaint are not, in my judgment, sustained by the evidence."

We agree with that conclusion on reading the record, and will give no further attention to that charge. The other ground, on which the appraisement was set aside, is the charge of misconduct in not giving Mr. Parker an opportunity to be heard in behalf of the insured before the appraisement was concluded. He testified that he made such a request of Mr. Driffield and that Mr. Driffield said that he would be heard at the proper time. Mr. Driffield denied this. Mr. Hall was dead at the time of the trial below. The District Judge was apparently not convinced that the appraisers agreed to hear or signified their intention of hearing Mr. Parker. On that subject he said:

"I think from the testimony that it is quite evident that Mr. Parker understood that he was to have an opportunity to be heard, although I do not think that Mr. Driffield intentionally misled him in the matter."

It is alleged in the complaint that the value of the property destroyed and the amount of loss to the insured was $28,000.00. That was the amount claimed in the verified proof of loss made by Parker. He testified as a witness in this case that there was nothing unusual or peculiar about the dehydrated products in the factory at the time of the fire, that there was nothing unusual about the storage of them, that they had simply been manufactured and left there and that they were in the same condition that other goods of like character, manufactured as they were manufactured, would ordinarily be. When asked what he would have said to the appraisers if he had been called he answered:

"I would have told them their value as they were listed at cost price on there, what could have been gotten for the goods, that they would have realized that much money."

"Q. That is, you would have told them the value was exactly what you said the value was in your proof of loss? A. Yes, sir.

"Q. Anything else? A. I don't think so."

He further said that if he had been given a chance he thought he could have proved that the value of the goods was as represented in the proof of loss, and that all of the property destroyed had a well recognized market value at the time of the fire. In addition to the information obtained by the appraisers from insured's books, including records of previous sales of the manufactured products, the appraisers procured and considered competitors' lists showing what they were asking for dehydrated products, and one, if not both of them made inquiry of the trade in like products.

"Every reasonable intendment and presumption is in favor of the award, and it should not be vacated unless it clearly appears that it was made without authority, or was the result of fraud or mistake, or of the misfeasance or malfeasance of the appraisers." Barnard v. Insurance Co., 101 Fed. 36, 41 C. C. A. 170.

[1, 2] Not only so as a principle of law, but the proof is convincing that the appraisers made a conscientious effort to justly and fairly determine and appraise the loss; and in doing so we think they had before them and considered what all reasonable men would say was sufficient to enable them to reach a fair and just conclusion. The complaint is that the insured's loss was more than that fixed by the

appraisers, and their misconduct or misfeasance was in not giving Mr. Parker a chance to appear before them and convince them, if he could, that the loss was more. No controversy between the parties was submitted to the appraisers for arbitration. All of the property had been consumed and there was no dispute as to what it was, and it all had a recognized market value at the time of the fire. Under the contract of submission the appraisers were to appraise, ascertain and determine the loss by estimating "the actual cash value of the property at and immediately preceding the fire." They were selected as appraisers because of their knowledge of the subject matter and their business judgment. They were not called on to discharge judicial or quasi-judicial functions as in arbitration, but to render a duty ministerial in character. They were not to determine disputed facts. There were none. They were simply to say what sum in their opinion would cover the loss. Toledo S. S. Co. v. Zenith Transp. Co., 184 Fed. 391, 106 C. C. A. 501; American Steel Co. v. Fire Ins. Co., 187 Fed 730, 109 C. C. A. 478. Appraisers are selected as experts, and use their own judgment as to how they will proceed. They may act on their own knowledge in reaching a conclusion. They may refresh that knowledge by appropriate inquiry from reliable sources, they may or may not take evidence, as the situation in their opinion requires, and they may reject that evidence after it has been taken if it does not accord with their views. They are chosen to make the estimate, and it is their opinion, when fairly and honestly arrived at, that binds the parties, and not the opinion and judgment of others.

Appellee relies upon Continental Ins. Co. v. Garrett, 125 Fed. 589, 60 C. C. A. 395, and that case seems to have greatly influenced the trial court in rendering the decree. There the property insured was a dwelling house. It was so completely destroyed by the fire that there was no way of ascertaining the kind, character and value of the interior finish of the house, otherwise than by the taking of testimony from those who knew the facts, which the appraisers neglected to do. That raised an issue of fact between the insurer and the insured as to what the property was that was lost. Its value could not be determined until that fact was known. In this case there was no dispute as to the kind, quantity and character of property consumed. It all had a market value, ascertainable by the appraisers without the taking of testimony from either side. There was no requirement in the agreement of submission that the appraisers should take testimony. They were selected because of their knowledge of the subject matter, their integrity and their business judgment, to ascertain, estimate and appraise the loss. The Garrett case is not controlling. We believe it without weight when applied to the facts here. Justice Lurton, who wrote the opinion in that case, points out in Omaha v. Omaha Water Co., 218 U. S. 180, 30 Sup. Ct. 615, 54 L. Ed. 991, 48 L. R. A. (N. S.) 1084, that the Garrett case was in fact an arbitration and not an appraisal. There the insured claimed that the loss sustained was the full amount of the insurance. The insurer denied this. The first and unavoidable inquiry was, what had been lost? This raised an issue of fact. The appraisers could not estimate the amount of the

loss until they had reached a conclusion on that issue, and the only way they could decide the fact in issue was by the taking of testimony. This made the procedure in that case one of arbitration, and the rules applicable to judicial proceedings applied.. In the Omaha Case. it is further said:

"But in an appraisement * * * the strict rules relating to arbitration and awards do not apply, and the appraisers were not rigidly required. to confine themselves either to matters within their own knowledge, or those submitted to them formally in the presence of the parties; but might reject, if they saw fit, evidence so submitted, and inform themselves from any other source, as experts who were at last to act upon their own judgment."

Ætna Ins. Co. v. Hefferlin, 260 Fed. 695, 171 C. C. A. 433, is like the Garrett Case. It also was an arbitration. There was a difference and dispute as to what was consumed in the fire.

We are not concerned with the question as to whether the appraisal is more or less than we now think it should have been, or whether it approximates, in our judgment, an amount that would. have been allowed on a regular trial in court; we are only concerned with whether it was fairly and honestly made, and expresses the unprejudiced and unbiased opinion and judgment of the appraisers. When so made a court is without right to set it aside. The record convinces us that there was no misconduct or misfeasance on the part of the appraisers, and that the procedure adopted and the appraisement they made violated no right of the appellee.

The decree is reversed with directions to set it aside.

STONE, Circuit Judge. In concurring, I think it proper to state, in my own way, the effect of the law as I understand it to be laid down in the above opinion.

A mere appraisal of value is held to be different from a common law arbitration at least in respect that it is less formal and may proceed under less restriction as to the necessity for hearings. City of Omaha v. Omaha Water Co., 218 U. S. 180, 194, 30 Sup. Ct. 615, 54 L. Ed. 991, 48 L. R. A. (N. S.) 1084; Am. Steel Co. v. Insurance Co., 187 Fed. 730, 733, 109 C. C. A. 478, and citations (3d Cir.).

An appraisal is the result of contract and the contract must, in so far as it is explicit, govern the rights of the parties and the methods to be followed thereunder. Williamson v. Insurance Co., 122 Fed. 59, 61, 58 C. C. A. 241 (8th Cir.); Barnard v. Insurance Co., 101 Fed. 36, 37, 41 C. C. A. 170 (8th Cir.). The difficulty, as here, usually arises from the circumstance that the contract providing for the appraisal is general in its terms. It rarely goes beyond provisions as to the circumstances under which an appraisal may be demanded, as to selection and qualification of appraisers, and that a majority may make an award. Where there is only such generality in the contract, it is implied by the law as a part of the contract that the appraisal shall be conducted in such a manner as to secure substantial justice and failure to so proceed is misconduct of which a court of equity will take cognizance. Continental Ins. Co. v. Garrett, 125 Fed. 589, 592, 60 C. C. A. 395 (6th Cir., Lurton). What is necessary to avoid such misconduct depends, of course, upon the circumstances of each appraisal.

The action of appraisers is presumed free from misconduct and such must be clearly shown. Continental Ins. Co. v. Garrett, 125 Fed. 589, 593, 60 C. C. A. 395 (6th Cir., Lurton); Williamson v. Insurance Co., 122 Fed. 59, 60, 58 C. C. A. 241 (8th Cir.); Barnard v. Insurance Co., 101 Fed. 36, 37, 41 C. C. A. 170 (8th Cir.).

But this presumption will not be overindulged where the award is very apparently unjust. Continental Ins. Co. v. Garrett, supra, 125 Fed. 593, 60 C. C. A. 395.

The right to a hearing before the appraisers concerns the conduct of the appraisal. It may exist or not according to the circumstances. There may be nothing in the contract making such requisite (Am. Steel Co. v. Insurance Co., 187 Fed. 730, 733, 109 C. C. A. 478 [3d Cir.]); or the character of the matter submitted and of the appraisers chosen may be such as to justify the inference that they are acting as qualified experts (Continental Ins. Co. v. Garrett, 125 Fed. 589, 592, 60 C. C. A. 395) and no hearing is required. But where it is clear that they could not, under the attendant circumstances, decide the matter submitted to them except upon evidence produced before them, the parties have a right to an opportunity to be heard in that regard and it is misconduct to deny such opportunity or to hear such evidence without notice. Continental Ins. Co. v. Garrett, 125 Fed. 589, 593, 60 C. C. A. 395 (6th Cir., Lurton).

⇐⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes