LEE, RESPONDENT, *v.* PROVIDENCE WASHINGTON INSURANCE CO., APPELLANT.

(No. 6,295.)

LEE, RESPONDENT, *v.* AETNA INSURANCE CO., APPELLANT.

(No. 6,296.)

(Submitted April 4, 1928. Decided April 20, 1928.)

[266 Pac. 640.]

*Fire Insurance—Arbitration and Award—Misconduct of Appraisers—Function of Court of Equity.*

Fire Insurance—Arbitration Favored by Law—When Award Conclusive.
1. The policy of the law is to favor the settlement of disputes by arbitration and every reasonable intendment will be indulged to give effect to such proceedings; if the proceedings were honestly and fairly conducted, i. e., if the award was not the result of fraud, or mistake of fact of law so gross and palpable as to be evidence of misconduct or undue partiality on part of the arbitrators, or their misfeasance (wrongful exercise of their authority) or malfeasance (the doing of an act which is positively unlawful or wrongful), a court of equity will not interfere with their judgment.

Same—Arbitration—When Award may be Set Aside.
2. Where arbitrators appointed under the provisions of a fire insurance policy to ascertain the loss sustained by the insured, fix the amount arbitrarily, without basis of fact and without knowledge or information of the subject under consideration, to the substantial injury of the insured, they are guilty of misconduct,

---

1. Conclusiveness of award, see note in 14 Am. St. Rep. 518. See, also, 3 Cal. Jur. 67; 2 R. C. L. 386.
2. See 3 Cal. Jur. 80; 2 R. C. L. 395.

or misfeasance, for which the award may be set aside, even though there may be an entire absence of improper motive on their part.

Same—Measure of Indemnity.

3. Indemnity is the basis or foundation of fire insurance law; unless there is a valuation given in the policy, the measure of indemnity is the expense, at the time the loss is payable, of replacing the thing insured or destroyed, in the condition in which it was at the time of the fire, not in excess of the amount specified in the policy.

Same.

4. Where a fire insurance policy provides that the insurer insures the owner of the property insured "to the extent of the cash value" of the property, the measure of recovery by the insured is the actual value of the property in the condition it was in at the time of the loss, taking into consideration its age and then condition and allowing for the difference arising from deterioration.

Same—Arbitration—Arbitrary Award—Court of Equity may Inquire into Method of Arriving at Conclusion.

5. Where the complaint in an action to set aside the award of appraisers respecting loss sustained by fire partially destroying the insured building alleged that they had arbitrarily made certain deductions from the amount found due, etc., the court could properly inquire into the method by which the appraisers arrived at their decision.

Same—Arbitration—When Only Courts Should Interfere With Award Made.

6. It is not every error or mistake of law or of fact which will warrant a court in setting aside an award made by appraisers selected by parties to a controversy such as the adjustment of loss sustained by fire insured against; they should interfere only to prevent manifest injustice.

Same—Arbitration—What Constitutes Misconduct on Part of Appraisers.

7. Where appraisers selected by a fire insurance company and one who sustained loss by fire to ascertain the actual cash value of the property at the time of the fire, after deducting a certain amount for physical deterioration from the figure arrived at, made a further deduction of ten per cent for "commercial depreciation" without hearing testimony as to such depreciation and without knowledge or information on the subject, their action was arbitrary in that respect and amounted to misconduct (see par. 2 above) warranting setting aside of their award.

---

[1] Arbitration and Award, 5 C. J., sec. 473, p. 186, n. 15; sec. 674, p. 244, n. 59. Fire Insurance, 26 C. J., sec. 559, p. 424, n. 27; sec. 567, p. 426, n. 71; sec. 580, p. 434, n. 80. Misconduct, 40 C. J., sec. 1, p. 1221, n. 29. Misfeasance, 40 C. J., p. 1223, n. 62.

[2] Arbitrary, 4 C. J., p. 1476, n. 34. Fire Insurance, 26 C. J., sec. 580, p. 433, n. 72.

[3,4] Fire Insurance, 26 C. J., sec. 1, p. 17, n. 4; sec. 78, p. 81, n. 10; sec. 450, p. 351, n. 81, 85.

[5] Fire Insurance, 26 C. J., sec. 580, p. 433, n. 72.

3. See 14 Cal. Jur. 561; 14 R. C. L. 840.
4. See 14 R. C. L. 1304.
6. Annulling award of arbiters, see note in 47 L. R. A. (n. s.) 445.

*Appeal from District Court, Park County; H. J. Miller,
Judge.*

ACTIONS by W. F. Lee against the Providence Washington
Insurance Company and against the Aetna Insurance Company.
Judgments for plaintiff and defendants appeal. Affirmed.

*Mr. E. Eugene Davis,* of the Bar of Spokane, Washington,
and *Mr. Frank Arnold,* for Appellant, submitted a brief; *Mr.
Davis* argued the cause orally.

The supreme court in this state has very definitely laid
down the rule regarding the sanctity and desirability of ap-
praisals in *Solem* v. *Connecticut Fire Ins. Co.,* 41 Mont.
351, 109 Pac. 432. (See, also, *Carlston* v. *St. Paul Fire
& Marine Ins. Co.,* 37 Mont. 118, 127 Am. St. Rep. 715, 94
Pac. 756; 26 C. J. 424.) It is also well settled that an award
of appraisers cannot be set aside for mistake not appearing
on the face of the award. (*Remington Paper Co.* v. *London
Assur. Corp.,* 12 App. Div. 218, 43 N. Y. Supp. 431; *Sweet* v.
*Morrison,* 116 N. Y. 19, 15 Am. St. Rep. 376, 22 N. E. 276.)
Nor for honest error in applying rules of law. (*Stemmer* v.
*Scottish Union & National Ins. Co.,* 33 Or. 65, 49 Pac. 588,
53 Pac. 498.) Nor for mere inadequacy in or overestimate of
amount of loss. (*Larkey* v. *Home Ins. Co.* (N. J. Eq.), 138
Atl. 664.) Nor is the award invalidated because the appraisers
considered an improper measure of damages, as, for example,
that the knowledge of the public that the goods had been in a
fire would affect their value. (*Aetna Fire Ins. Co.* v. *Davis,*
21 Ky. Law Rep. 1456, 55 S. W. 705.) Nor can a party com-
plain when he has had an opportunity to be present at the
deliberations of the appraisers (and, as in this case, been
present, presented his evidence and offered the appraiser
selected by him as a source of information) that all evidence
that might have been procured was not procured and con-
sidered by the board. (*Carlston* v. *St. Paul Fire & Marine*

*Ins. Co.,* supra; *Phoenix Ins. Co.* v. *Everfresh Fruit Co.,* 294 Fed. 51.)

Plaintiff complains of the award because of the item denominated "commercial depreciation," which he contends the appraisers had no right to consider in any event. Aside from the fact, as demonstrated by the above cases, that the award fairly and honestly made on proper hearing is final, and that to appraisers' method of arriving at their final figures is not subject to attack, the fact remains that these appraisers did just exactly what the parties had employed and authorized them to do. Their duty under the agreement which the parties had solemnly entered into in writing required that they should take a depreciation not only from use and age, but also from condition, location or otherwise, and their best judgment and the information they acquired by their investigation at the place of the fire, and from the plaintiff himself, determined ten per cent as a proper amount for this item. They used the words "commercial depreciation," which was apparently an accepted term, as embodying all elements outside of the actual physical wear and tear, and applied it according to their best interpretation of the oath they had taken.

*Messrs. Gibson & Smith,* for Respondent, submitted a brief; *Mr. Fred L. Gibson* argued the cause orally.

The questions submitted to the appraisers were: (1) To determine the sound value of the property; (2) the loss to the insured by reason of its damage and destruction by fire. What is meant by "sound value"? This is answered by the courts as the cost of producing or reproducing the property in its existing condition. (*Low Estate Co.* v. *Lederer Realty Corp.,* 35 R. I. 352, Ann. Cas. 1916A, 341, 86 Atl. 881.)

From the provisions of the appraisement agreement it is clear that the only reduction to be made from the cost of replacing or repairing the building is a deduction for the physical

depreciation of the property, and the appraisers are not permitted to go into the field of speculation to determine an imaginary "commercial depreciation," for it is clear that the words "location or otherwise," following "use, age and condition," under the doctrine of *ejusdem generis,* refer to the actual physical depreciation, the result of cases like unto "use," "age" and "condition." The words "location or otherwise," cunningly inserted in the printed forms of the appraisement agreement which the insurance companies use, are only intended and calculated to be used by their adjusters and appraisers in securing settlement of losses for less than the contractural and statutory measure of indemnity in cases where they may be so made available.

Where a statute or the policy limits the amount of the recovery to the cost of restoring or replacing the property, the measure is not the cash or market value of the damage or the loss, but the cost of such restoration or replacement. (26 C. J. 353.)

Where a policy provides that the amount of loss is to be estimated according to the actual cash value of the property at the time of the fire, which shall not exceed what it will cost to replace the property, the loss is to be determined by deducting the value of the foundation and portions of the building not destroyed, if used at the same place from the total value of the building, since the contract contemplates the cost of replacing the structure. (*Burkett* v. *Georgia Home Ins. Co.,* 105 Tenn. 548, 58 S. W. 848 (cited in 26 C. J. 353.)

While, of course, it is a general rule of law that the intendments are in favor of the validity of an award, and the award cannot be set aside merely upon a question as to the judgment of the appraisers, this is not a question of the judgment of the appraiser and umpire, but it is a direct attack upon their action by reason of their having departed from the questions submitted to them. This matter has been passed upon in the recent Idaho case of *Boise Association of Credit Men* v. *United*

*States Fire Ins. Co.,* 44 Idaho, 249, 256 Pac. 523, and the discussion of the Idaho court in that case is instructive, and we refer the court to that case in support of our contention.

The appraisal having failed, the parties will not be required to proceed to a new appraisal, but the court may substitute itself for the appraisers. (*Aetna Ins. Co.* v. *Hefferlin,* 260 Fed. 695; *Cook* v. *Miller,* 25 R. I. 92, 1 Ann. Cas. 30, 54 Atl. 927.)

An award is futile and of no binding effect upon the parties thereto unless there has been a substantial compliance with the terms of the agreement of submission. (2 Ruling Case Law, 377; *Christenson* v. *Cudahy Packing Co.,* 198 Cal. 685, 247 Pac. 207.) Appraisers cannot arbitrarily fix a valuation upon property without regard to the character of the property. (*Carlston* v. *St. Paul Fire & Marine Ins. Co.,* 37 Mont. 118, 127 Am. St. Rep. 715, 94 Pac. 756.)

Whenever in a proper proceeding it is made to appear either by the face of the award or by matter extrinsic thereto that the arbitrators have fallen into such error of law or fact as will make the award operate prejudicially against the complaining party in a material matter, it is void. (5 C. J. 181; *Milwaukee Mechanics' Ins. Co.* v. *Sewell,* 66 Okl. 210, 168 Pac. 660.) An award of appraisers under a fire policy will be set aside for a mistake of fact or of law. (26 C. J. 426.) That the arbitrators have fallen into error, either in fact or in law, may be shown when it appears on the face of the award or by matter extrinsic thereto. (5 C. J., 181; *Milwaukee Mechanics' Ins. Co.* v. *Sewell,* supra.)

This action being in equity, the rule applies that equity having obtained jurisdiction for the purpose of setting aside the award may properly retain the cases to determine the amount of damages and render decree therefor. (26 C. J. 434; *Carlston* v. *St. Paul Fire & Marine Ins. Co.,* supra.) And the procedure in this case was followed in the case of *Aetna Ins. Co.* v. *Hefferlin,* 260 Fed. 695, a Montana case.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiff, on and prior to March 1, 1926, was the owner of a two-story building in Clyde Park, Montana, used for garage and public hall purposes. The building was insured for $5,000, and the contents for $500, under two contracts; one with the defendant Providence Washington Insurance Company, insuring plaintiff against loss by fire to the building in an amount not exceeding $3,000, and against loss to personal property in the building in an amount not exceeding $500; the other with the Aetna Insurance Company, insuring him against loss by fire to the building in an amount not exceeding $2,000.

On March 1, 1926, the building was destroyed by fire, except that portions of the wall were left standing; all of the personal property was totally destroyed. The plaintiff presented claims to the defendants alleging a loss in excess of $10,000.

In due time adjusters representing the defendants waited upon plaintiff and examined the scene of the fire. There was and is no controversy over the personal property loss, all parties agreeing that it exceeded the insurance thereon. Plaintiff and the adjusters were unable to agree upon the amount of damage to the building, and resort was made to arbitration as provided for in the policies. Each policy provided that the company should not be liable beyond the actual cash value of the property at the time of loss and that the loss should be "ascertained or estimated according to such actual cash value, with proper deductions for depreciation, however caused." It was provided that in the event of disagreement as to the amount of loss, the same should be ascertained by two competent and disinterested appraisers, the insured and the company each selecting one, and that these two should select a competent and disinterested umpire; "the appraisers together shall then estimate and appraise the loss, stating separately the sound value and damage, and, failing to agree, shall sub-

mit their differences to the umpire; the award in writing of any two shall determine the amount of such loss." The agreement to submit the dispute to arbitration provided, among other things, that "it is further expressly understood and agreed that in determining the sound value and the loss or damage upon the property hereinbefore mentioned, the said appraisers are to make an estimate of the actual cash cost of replacing or repairing the same, or the actual cash value thereof, at and immediately preceding the time of the fire; and in case of depreciation of the property from use, age, condition, location, or otherwise, a proper deduction shall be made therefor." As appraiser the plaintiff chose Bert D. Raver of Livingston, the defendants M. D. O'Connell of Butte, and these gentlemen selected as umpire Fred F. Willson of Bozeman, one of the leading architects of the state.

The appraisers agreed that the replacement value of the building was $9,297.70, and that the value of the salvage was $2,130, but were unable to agree as to the amount of depreciation. As extensive repairs had been made upon the building within the year, Mr. Raver would not agree to allow anything for depreciation. Mr. Willson was then called in. That gentleman and Mr. O'Connell agreed to fix the physical depreciation of the building at 1.87 per cent per annum, or 22.44 per cent for twelve years, the age of the building. The amount of the depreciation thus fixed, $2,086.40, they deducted from $9,297.70 (the replacement value), which left $7,211.29; from this latter they deducted ten per cent for "commercial depreciation," leaving $6,490,167,—"call it $6,500," they said. From $6,500 they deducted $2,130, leaving $4,370, and this they called $4,375. To each of these amounts, $6,500 and $4,375, they added $500, the value of the personal property, and indorsed their award upon the agreement for arbitration; therein they certified that they had carefully examined the "premises and remains of the property" and had "determined the sound value to be $7,000 and the loss and damage to be $4,875." Mr. Raver refused to join in the award. After signing the

award Messrs. Willson and O'Connell gave to Mr. Raver a copy of it with a statement in writing showing their method of arriving at the "sound value" and "loss and damage." Over objection, the statement was admitted in evidence as Plaintiff's Exhibit 2. It shows that those making the appraisement started with "replacement value $9,297.70" and figured the depreciation as above stated.

The defendants offered to pay the amount of the award but plaintiff refused to receive it. On the contrary, he commenced an action against each company to set aside the award and to obtain judgment for the full amount of the insurance. Among other allegations the plaintiff alleged in each complaint that the umpire and appraiser O'Connell, "notwithstanding that they were in absolute ignorance as to the condition and preservation of said building at the time of the fire," arbitrarily and in disregard of the actual depreciation of the property from the time of its construction, deducted from the replacement value 22.44 per cent thereof for depreciation, and so fixed the depreciation "not from any actual knowledge that they had or obtained as to the condition of repair and preservation of the building at the time of the fire, and without any such knowledge or information," but according to a percentage of depreciation which they fixed arbitrarily; and that after deducting the $2,086.40 for depreciation and fixing the sound value of the building at $7,211.30, they deducted an additional ten per cent, amounting to $721.13, for what they termed "commercial depreciation"; that this latter deduction was done arbitrarily and without warrant in law or in fact; that they had no basis upon which to make the deduction but made it arbitrarily and in disregard of the true and sound value of the building, and to justify such arbitrary and wrongful action on their part they "gave to the deduction the imaginative and fanciful designation of 'commercial depreciation.'"

It is alleged that the umpire and the appraiser O'Connell furnished to plaintiff the calculations, determinations and de-

ductions which they made, in writing, as a part of and in explanation of their so-called award.

It is further alleged that the reasonable expense of replacing the building in the condition in which it was at the time of the fire, was $10,713.56.

It will not be useful to set forth further the condition of the pleadings.

By stipulation orders were made consolidating the cases for trial, for all purposes, with the understanding that the court should enter separate judgments. The court, after hearing the testimony, found for the plaintiff and entered an appropriate judgment against each defendant. The defendants have appealed. The cases have likewise been consolidated in this court and will be treated as one.

The question for decision is whether the trial court was justified in setting aside the award of the appraisers. If the answer is in the affirmative the court was warranted in substituting itself for the appraisers, and determining the amount of damages sustained by plaintiff and rendering judgment therefor. (*Aetna Ins. Co.* v. *Hefferlin,* 260 Fed. 695; *Cooke* v. *Miller,* 25 R. I. 92, 1 Ann. Cas. 30, 54 Atl. 927.)

It is the policy of the law to favor the settlement of disputes [1] by arbitration and every reasonable intendment will be indulged to give effect to such proceedings. (5 C. J. 20.) "The decision by arbitration is the decision of a tribunal of the parties' own choice and election. It is a popular, cheap, convenient and domestic mode of trial, which the courts have always regarded with liberal indulgence. They have never exacted from these unlettered tribunals—this *rusticum forum*— the observance of technical rule and formality. They have only looked to see if the proceedings were honestly and fairly con-ducted, and, if that appeared to be the case, they have uniformly and universally refused to interfere with the judgment of the arbitrators." (Language of Chancellor Kent in *Under-hill* v. *Van Cortlandt,* 2 Johns. Ch. (N. Y.) 339, adopted by

this court in *Carlston* v. *St. Paul Fire & Marine Ins. Co.*, 37
Mont. 118, 127 Am. St. Rep. 715, 94 Pac. 756.)

While all the courts and text-writers seem to agree upon this
general statement, there is much division of opinion respecting
the circumstances under which a court of equity will look into,
and if necessary, set aside, the decision of a board of appraisers.
A large number of courts follow the rule that where the amount
of loss or any question touching the liability of the insurer is
submitted to arbitrators or appraisers under an agreement that
the question shall be determined by their award, both parties
will, in the absence of fraud or misconduct, be conclusively
bound thereby, so that the matter cannot be again litigated in
the courts. (See Cooley's Briefs on Insurance, 2d ed., vol. 7,
p. 6172.) Another statement which has very general support
in the authorities is that an award made by the appraisers is
supported by every reasonable intendment and presumption,
and it should not be vacated unless it was made without au-
thority, or was the result of fraud or mistake, or of the mis-
feasance or malfeasance of the appraisers. (26 C. J. 424;
*Barnard* v. *Lancashire Ins. Co.*, 101 Fed. 36; *Phoenix Ins. Co.*
v. *Everfresh Fruit Co.*, 294 Fed. 51; *Niagara Fire Ins. Co.* v.
*Boon*, 76 Ark. 153, 88 S. W. 915; *Orient Ins. Co.* v. *Harmon*
(Tex. Civ. App.), 177 S. W. 192.)

The word "misconduct" as employed in the first statement
of the rule is comprehensive enough to include "misfeasance"
and "malfeasance." As variously defined, misfeasance is the
improper doing of an act which a person might lawfully do;
malfeasance is the doing of an act which a person ought not to
do at all. (*Bell* v. *Josselyn*, 3 Gray (Mass.), 309, 63 Am. Dec.
741.) Misfeasance is the wrongful and injurious exercise of
lawful authority, or the doing of a lawful act in an unlawful
manner. Malfeasance is the unjust performance of some act
which the party had no right, or which he had contracted not,
to do. (*Dudley* v. *City of Flemingsburg*, 115 Ky. 5, 103 Am.
St. Rep. 253, 1 Ann. Cas. 958, 60 L. R. A. 575, 72 S. W. 327.)
Misfeasance is the wrongful or injurious exercise of lawful

authority, or the doing of a lawful act in an unlawful manner, while malfeasance is doing an act which is positively unlawful or wrongful. (Bouvier's Law Dictionary (Misfeasance); and see 40 C. J. 1222.)

With respect to "mistake," it has been said that although a mistake which is properly to be considered as an honest error of judgment will not avoid an award, a mistake of fact or law which is so gross and palpable as to be evidence of misconduct or undue partiality, may be held ground of impeachment; and it had been held that such mistakes only are impeachable mistakes. (5 C. J. 186.)

After all, it would seem that an adequate test is, were the proceedings honestly and fairly conducted?

With the foregoing in mind we turn to the allegations of [2] the complaint. The gravamen of the charge is that in fixing the amount of depreciation of the building and particularly in respect of "commercial depreciation," the appraisers were guilty of an arbitrary and wrongful action. Upon this theory the complaint states a cause of action; it is not asserted that it does not.

Now, "arbitrary" is thus defined in Corpus Juris: "Fixed or done capriciously or at pleasure, without adequate determining principle; not founded in the nature of things; nonrational; not done or acting according to reason or judgment; depending on the will alone; absolute in power; capricious; tyrannical; despotic," with ample supporting authorities. (4 C. J. 1476.)

It goes without saying that if appraisers, without basis of fact, without knowledge or information of the subject under consideration, act with respect thereto in an arbitrary and wrongful manner, to the substantial injury of one of the parties affected, they are guilty of misconduct, or, it may be said, of misfeasance, at least. There may be ample misconduct in a legal sense to cause the court to set aside an award, even where there is no ground for importing the slightest improper motives to the appraisers. (*Providence Washington Ins. Co.* v. *Board of Education*, 49 W. Va. 360, 38 S. E. 679.)

"In the legal idea of misconduct an evil intention is not a necessary ingredient." (*Howard* v. *Edgell*, 17 Vt. 1; *Palmer* v. *Van Wyck*, 92 Tenn. 397, 21 S. W. 761; *United States* v. *Farragut*, 22 Wall. (U. S.) 406, 22 L. Ed. 879 [see, also, Rose's U. S. Notes].) And it may be so with respect to misfeasance.

. This is an appropriate place to say that we think the appraisers and the umpire acted in good faith throughout their entire service.

Section 8157, Revised Codes 1921, provides that if there is no [3, 4] valuation in the policy, the measure of indemnity in an insurance against fire is the expense, at the time that the loss is payable, of replacing the thing lost or injured, in the condition in which it was at the time of the injury, and that provision is as much a part of the contract of insurance as though written therein. (*Pasherstnik* v. *Continental Ins. Co.*, 67 Mont. 19, 214 Pac. 603; *Capital Finance Corp.* v. *Metropolitan Ins. Co.*, 75 Mont. 460, 243 Pac. 1061.)

Both by the express terms of the policies and by the provisions of the statute, the insurance companies were liable to pay to the insured, by reason of the injury and destruction of . his property by fire, which was the hazard covered by the policies, a sum equal to the expense he would be put to in replacing the property in the condition in which it was at the time of the injury, not in excess of the amounts specified in the policies.

Indemnity is the basis or foundation of all insurance law. (*McAnarney* v. *Newark Fire Ins. Co.*, 247 N. Y. 176, 159 N. E. 902; *Castellain* v. *Preston*, 11 Q. B. D. 380; Richards on Insurance Law, 27; Wood on Fire Insurance, sec. 741.) The contract of the insurer is not that if the property is burned he will pay its market value, but that he will indemnify the assured, that is, save him harmless or put him in as good a condition, so far as practicable, as he would have been if no fire had occurred. (*Washington Mills Mfg. Co.* v. *Weymouth Ins. Co.*, 135 Mass. 503.)

The defendants, in their contracts with the plaintiff, each stipulated that it "does insure" the plaintiff "to the extent of the actual cash value." This means that the insurers engaged to insure the plaintiff to the limit of the actual cash value of the property not exceeding the amount stipulated in the policy. (*McAnarney* v. *Newark Fire Ins. Co.*, supra.)

The measure of recovery should be the actual value of the property in the condition it was in at the time of loss, taking into consideration its age and condition. If by reason of age or use it is less valuable than a new building erected upon the same place, of similar materials, and of the same dimensions, the insurer should be allowed for the difference arising from deterioration. (Wood on Fire Insurance, sec. 472; *Boise Association of Credit Men* v. *United States Fire Ins. Co.*, 44 Idaho, 249, 256 Pac. 523.)

We think this is what is meant by the use of the words "actual cash value" in the policies, and is to all intents and purposes the meaning of the clause "for the purpose of ascertaining and fixing the amount of sound value and loss or damage to the property." "Depreciation of the property from use, age, condition, location or otherwise" can mean no more than that the parties intend to ascertain the actual cash value of the property at the time of the loss.

It is urged that as the appraisement is fair upon its face [5] it was not proper for the trial court to consider the method by which the appraisers reached their decision. This cannot be admitted. The complaint, as we have seen, charges facts sufficient to invoke the interposition of a court of equity. This is not a new invocation of the court's power; "There are many cases in which the courts have inquired into the correctness of the principle on which the arbitrator bases his decision. (2 Am. & Eng. Ency. Law, 2d ed., 777, note 1; *Harty* v. *Innis*, 6 Moo. (Eng.) 574, 17 E. C. L. 59; *Johnson* v. *Durant*, 2 B. & Ad. (Eng.) 925, 22 E. C. L. 211.)" (*Providence-Washington Ins. Co.* v. *Board of Education*, supra; *Turner* v. *Hartford Fire Ins. Co.*, 185 Iowa, 1363, 172 N. W. 166.)

But courts should be cautious in interfering in this class [6] of cases, and should never do so except to prevent manifest injustice. "It is not every error or mistake of law or of fact that will warrant the setting aside of an award. If it were, there would be few awards made which would stand the test of judicial investigation; for they are most frequently made by men not learned in the law nor schooled in judicial proceedings." (*Pane* v. *Metz*, 14 Tex. 56; *Orient Ins. Co.* v. *Harmon* (Tex. Civ. App.), 177 S. W. 192.)

There was evidence to sustain the allegation that the umpire and Appraiser O'Connell gave Appraiser Raver, for the plaintiff, a copy of the award, with a statement in writing explanatory of their method of arriving at the result reached by them. This document was received in evidence and considered by the court, as was proper.

Whether the appraisers were justified in determining that there had been a physical depreciation of the building at the rate of 1.87 per cent per annum during its life, we need not [7] inquire. But that the deduction of ten per cent for "commercial depreciation" was made without basis in fact or in law is clear. When testifying as witnesses, the umpire and Appraiser O'Connell were asked the meaning of the term "commercial depreciation" but were unable to give any satisfactory explanation of it. Mr. O'Connell said that ten per cent was deducted for "commercial depreciation" by reason of the fact that there were vacant buildings at Clyde Park that were not rented; that the building (before destruction presumably) was worth ten per cent less in Clyde Park than it would have been were it in Livingston; that he could not see any necessity for two garages existing in Clyde Park; that the earning capacity of the building had depreciated ten per cent (but the evidence did not show anything of the kind; on the contrary, it showed that there had not been any depreciation in the earning capacity of the building); that "it is just simply a depreciation that we placed on the building to be less than ten per cent than what it would be in a growing—in a town

where things were going along.'' He took the sound value of the building to be its market value.

Mr. Willson gave as his reasons the fact that some of the buildings in Clyde Park were not occupied; that there had been a reduction in the school census; that Clyde Park is on a branch line; that the town did not seem to warrant the existence of two garages; that the assessment upon the building had been cut down; that the plaintiff had not been receiving all his rent. He said, finally, that his estimate was simply a matter of his judgment,—''you could not compute it at all.''

The appraisers did not receive any testimony, nor have any knowledge or information, justifying their fixing any amount of depreciation, unless we except actual physical depreciation, so far as the record shows. Their action in deducting ten per cent of the value of the building after they had already deducted 22.44 per cent was arbitrary, and, as a matter of law, wrongful. ''Appraisers cannot arbitrarily fix a valuation upon property without regard to the character of the property.'' (*Carlston* v. *St. Paul Fire & Marine Ins. Co.*, supra.) It follows that as a matter of law their action amounted to misconduct, misfeasance.

The trial court after hearing all of the testimony produced determined that the actual value of the building was at least $5,000, the amount of the insurance, and set aside the award of the appraisers, and found for the plaintiff. Upon this record we are satisfied that the court was fully warranted in so doing.

The judgments are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.

Rehearing denied May 4, 1928.