Dudley v. City of Flemingsburg.

CASE 2—ACTION BY W. B. DUDLEY AGAINST THE CITY OF FLEMINGS-BURG FOR PERSONAL INJURIES, BY BEING KNOCKED DOWN BY A COASTING SLED ON THE STREET.—MARCH 3.

# Dudley v. City of Flemingsburg.

APPEAL FROM FLEMING CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.    AFFIRMED.

MUNICIPAL CORPORATIONS—COASTING ON STREET—INJURY TO TRAV-ELER—LIABILITY.

Held:    A municipal corporation in the preservation of the peace, maintenance of good order, and the enforcement of the laws for the safety of the public, possesses governmental functions and therefore is not liable for injuries sustained by one who is run into by a coasting sled on the street.

G. A. CASSIDY, J. D. PUMPHREY AND J. F. MAHER, ATTORNEYS FOR APPELLANT.

The main cross street of the city of Flemingsburg is very steep from the center of the town, going either north or south, and on the occasion of the injury to appellant, was covered with ice and sleet and was permitted by the city officials to be used by scores of men and boys for coasting on sleds and slides to the great danger of pedestrians who were compelled to cross same in going to and from their usual avocations; and the appellant in endeavoring to cross said street was struck by one of these coasting slides and knocked down, breaking his collarbone and bruising and otherwise injuring him, whereby he was compelled to incur physicians' bills, and suffer great physical pain, together with being permanently injured for life. All of which we maintain was due to the negligence and carelessness of appellee.

This amusement was permitted to go on for several days under the very nose of the city officials and over the protest of many good citizens.

Appellant filed suit against the city for the damages he thereby sustained, setting up the facts above recited, in the Fleming circuit court.

A demurrer was filed and sustained to his petition from which judgment this appeal is prosecuted.

The city officials not only permitted this nuisance to continue for several days, but some of them, including the mayor, permitted the street to be iced at night by sprinkling and pouring water thereon, thereby making it a perfect sheet of ice.

We maintain that municipal corporations are required to use their best efforts to keep their streets in a reasonably safe condition, and that where they not only neglect to do this, but by permission given to these thoughtless boys by the chief officer, the mayor, the street is made dangerous and is suffered to continue so for several days, it becomes a nuisance and the city should be held liable for injuries to pedestrians caused thereby.

### AUTHORITIES CITED.

James' Admr, v. Trustees of Harrodsburg, 85 Ky., 191; Faulkner v. Aurora, 44 Am. Rep., 1; Little v. City of Madison, 24 Am. Rep., 435; Dill. on Mun. Corps., secs. 1015, to 1025; Glasgow v. Gillenwaters, 23 Ky. Law Rep., 2375.

W. G. DEARING AND O. R. BRIGHT, FOR APPELLEE.

It will not be urged by appellant that the falling of snow, rain and sleet, making the street slick and slippery, created any liability on appellee, but appellant contends that the coasting on the street created a nuisance, and the failure or neglect of appellee to abate the nuisance creates a liability, and the person injured has a right to sue and recover.

The direct question as to the liability of a city for coasting has never been raised in this State, but has been raised in other States, and with one exception, has been universally decided against appellee's contention.

A municipal corporation has a dual character, the one public and the other private, and exercises correspondingly two-fold functions, the one governmental and legislative and the other private and ministerial. In its public character, it acts as agent of the State to enable it the better to govern that portion of its people residing within the municipality, and to this end there is granted to or imposed upon it by the charter of its creation powers and duties to be exercised and performed ex-

Dudley v. City of Flemingsburg.

clusively for public governmental purposes. These powers are legislative and discretionary, and the municipality is exempt from liability for an injury resulting from the failure to exercise them, or from their improper or negligent exercise.

Therefore, we think it quite clear there can be no liability on the part of a municipal corporation for an injury received in consequence of the unlawful use of a street, especially in the absence of a statute defining such liability. It would be a great wrong to hold a city liable in damages for every unlawful act done therein; such a rule would destroy local self government.

### AUTHORITIES CITED.

Kentucky Statutes, secs. 8, 3619, 3643; Dillon on Mun. Corp., 3d ed., sec. 951; Jolly's Admx., v. City of Hawesville, 89 Ky., 279; Prather v. City of Lexington, 13 B. M., 559; Faulkner v. City of Aurora, 44 Am. Rep., 1; Burford v. Grand Rapids, 51, Am. Rep., 105; Schultz v. City of Milwaukee, 35 Am. Rep., 779; Calwell v. City of Boone, 51 Iowa, 647; Steele v. City of Boston, 128 Mass., 583; Ray v. City of Manchester, 88 Am. Dec., 192; Campbell's Admx. v. City Council of Montgomery, 25 Am. Rep., 656, 4th Ky. Law Rep., 737; Mayor and Councilmen of Wilmington v. Joseph W. Vandegrift, 25 L. R. A., 538; P. B. Bartlett v. Town of Clarksburg, 43 L. R. A., 295; Jones v. City of Williamsburg, 47 L. R. A., 294; City of Madisonville v. Bishop, 23 Ky. Law Rep., 2363; City of Glasgow v. Gillenwaters, 23 Ky. Law Rep., 2375.

OPINION OF THE COURT BY JUDGE NUNN—AFFIRMING.

The appellant sued the city of Flemingsburg, alleging that in the month of February, 1902, a heavy sleet had fallen, and the streets of the city were covered with ice and snow, which remained on the streets for several days, during which time the mayor and the other officials of the city suffered, permitted and encouraged men and boys to congregate on and coast down Main street, a distance of four or five hundred yards, on sleds and slides, at the rate of 75 miles per hour, to the great danger of persons using this street and other streets crossing it; "that this coasting was kept up almost throughout the entire day of the 7th of February, 1902, the day on which appellant was injured, and

many complained to the authorities, the mayor, police judge, councilmen and marshal, and they neglected and refused to prevent or stop the illegal usage and practice of coasting on the street, although the street was appropriated almost entirely to the use of boys and reckless men, white and black, who were boisterous and riotous in their behavior and manner, and the same was continued for several days, with the knowledge of the officials of the defendant, without protest from them, or any effort to prevent it, and that the officials could have prevented the illegal and dangerous use of the streets if they had made any effort to do so; that on the evening of the 7th day of February, 1902, about the hour of seven o'clock, appellant started to the business portion of the city, and in his effort to cross Main street, and when exercising ordinary care for his own safety, he was run against by one of the coasters with a sled, and was knocked down, and his head injured, his collar bone broken, and he was otherwise bruised and severely injured, and was put to great expense in the way of medical and doctor bills to effect a cure; and that he was permanently injured to his damage in the sum of $2,000." The court below sustained a demurrer to that petition, and appellant is here on appeal.

There are two general principles underlying the administration of government of municipal corporations: The one is that a municipal corporation, in the preservation of peace, maintenance of good order, and the enforcement of the laws for the safety of the public, possesses governmental functions, and represents the State. The other is where the municipal corporation exercises those powers and privileges conferred for private, local or merely corporate purposes, peculiarly for the benefit of the corporation. Under the former, the city is not liable for the malfeasance, misfeas-

ance, or nonfeasance of its officers. Under the latter, it is. Malfeasance is the unjust performance of some act which the party had no right, or which he had contracted not, to do. Misfeasance is the wrongful and injurious exercise of lawful authority, or the doing of a lawful act in an unlawful manner. Nonfeasance is the nonperformance of some act which ought to be performed. Appellant's petition is, in substance and effect, to recover damages from appellee for personal injuries by reason of the misfeasance or nonfeasance of its officials in authorizing and consenting to the coasting on its streets by disorderly persons and riotous assemblies, and failing to prohibit and prevent same. In the case of Schultz v. City of Milwaukee, 49 Wis., 254, 5 N. W., 342, 35 Am. Rep., 779, the court said: "The coasting or sliding down Poplar street, in the manner and to the extent charged in the complaint, was, while being indulged in, a grievous public nuisance, which the city authorities ought to have prevented or suppressed. But this duty is a public or police, rather than a corporate duty, in the performance of which the corporation, as such, has no particular interest, and from which it derives no special benefit or advantage in its corporate capacity, but which it is bound to see performed in pursuance of a duty imposed by law for the general welfare of the inhabitants or of the community." And the court in that case relieved the city from liability. In the case of Faulkner v. City of Aurora, 44 Am. Rep., 9 (a case in which the facts are the same as those in the case at bar), the court said: "It is obvious that in the case before us the injury did not result from any defect in the highway. It was produced by the act of those improperly and unlawfully using the highway, which was at the time, and but for the unlawful act of those improperly using the street, in a reasonably safe and convenient condition for

public travel. The complaint is not that the appellant's son was injured because of defects in the street rendering it unsafe and unfit for public use, but because persons, while engaged in improperly using the street, ran their coasting sleds against his son, thereby injuring him. If the appellee is liable for the injury thus produced, it would follow, logically, that it would be liable for an injury caused by loafers lounging on its streets, occurring in the presence of its officers, if it were known that such persons were accustomed to lounge and loaf upon its streets. To hold incorporated cities liable for such injuries would be unjust, and, we think, without the sanction of the law." In the case of Borough of Norristown v. Fitzpatrick, 94 Pa., 121, 39 Am. Rep., 771, the court said: "The appellee could only arrest and stop the sport of coasting upon its streets through its officers and police force, but, as held in the same case, the appellee would not be responsible for the neglect or failure of its officers to stop those engaged in thus using its streets."

The appellant, in his petition, claims that the use and the manner of use of this street by the coasters amounted to an obstruction of the street for which the city was liable. In the case of Faulkner v. City of Aurora, supra: "It is held that anything in the condition of the highway which renders it unsafe or inconvenient for travel is a defect or want of repair. It may be a hole in the highway, or it may consist of a stone or log or other obstacle left on its surface, or a post standing within its limits, or a barrier stretched across it, though not touching it, or it may be trees or walls standing by or upon it, and liable to fall and injure travelers, or it may be an awning projecting over it." For injuries from such obstructions the city would be liable. Continuing, the court in that case said: "But we are not aware of any precedent for holding an illegal use of the

Dudley v. City of Flemingsburg.

highway by men, animals, vehicles, engines, or any other object, while movable and actually being moved by human will and direction, and neither fixed to, nor resting on, nor remaining in one position within the traveled part of, the highway, to be a defect or want of repair for which the city or town is liable." It is obvious that in the case before us the injury did not result from any defect or obstruction in the highway. It was produced by the acts of those improperly and unlawfully using the highway, and for which the city or corporation is not liable. To the same effect is the case of Prather v. City of Lexington, 13 B. Mon., 563, 56 Am. Dec., 585, in which a mob destroyed property of Prather in the city of Lexington. The court, after discussing defects in the petition, used this language: "But we place the decision of the question arising upon the demurrer to the plaintiff's declaration upon broader grounds. The officers of a city are quasi civil officers of the government, although appointed by the corporation. They are personally liable for their malfeasance or nonfeasance in office, but for neither is the corporation responsible." To the same effect is the case of Ward v. City of Louisville, 16 B. Mon., 191. In the case of Jolly's Administrator v. City of Hawesville, 89 Ky., 281 (11 R., 477), (12 S. W., 313), the facts were that numerous persons congregated on the streets of Hawesville, in the presence of and with the consent of the city officials, with guns and pistols, and engaged in sham battle, pursuing and shooting at each other in such close proximity as to endanger the lives of those who were not, as well as those who were, engaged; and this continued from early in the morning until late in the evening, without any effort on the part of the marshal, though aware of it, to stop it; and plaintiff's son, who was not engaged in this unlawful amusement, was shot in the

eye with a wad and killed, and the plaintiff sued the city for damages. The court, applying the principles of law above named, dismissed her petition; and the court in that case, after referring to Pollock's Administrator v. City of Louisville, 13 Bush, 221, 26 Am. Rep., 260, and Greenwood v. City of Louisville, 13 Bush, 226, 26 Am. Rep., 263, and the two cases, 13 B. Mon., and 16 B. Mon., supra, as sustaining the court's position, used this language: "Such has been the uniform ruling of this court, and a different one would be not only perversive of the main design of creating municipal corporations, intended principally as auxiliary of the State government, but open the door for actions against cities on account of every personal injury in any degree attributable to misfeasance or nonfeasance of police officers, and thus impose burdens on taxpayers in no just sense at fault or liable. This long and well settled doctrine has not been modified by statute of this State, except to the extent that section 5, c. 1, Gen. Stat. [now section 8, Ky. St.], makes a city liable for damages done to property therein by riotous and tumultuous assemblies of people. But the care and particularity with which the conditions of such liability are set out in the statute, and the restriction of it in express terms to cases of injury to property, shows the Legislature did not intend to thereby authorize a recovery against the city for personal injury resulting from the malfeasance or negligence of police officers." To the same effect is the case of City of Madisonville v. Bishop, 113 Ky., 106 (23 R., 2363), 67 S. W., 269. These cases all rest on the ground that the municipal corporation represents the Commonwealth, and municipal officers, while engaged in those duties which relate to the public safety and the preservation of public order, are the servants of the State.

Perceiving no error, the judgment is affirmed.