AMERICAN SURETY COMPANY OF NEW YORK ET AL. *v.* STATE OF INDIANA, EX REL. BOOTH, RECEIVER.

[No. 10,426.   Filed June 25, 1920.   Rehearing denied December 10, 1920.   Transfer denied June 30, 1921.]

1. APPEAL.—*Questions Presented.—Motion to Modify Judgment. —Failure to Except to Conclusions of Law.*—Where the judgment follows the conclusions of law, and they were not excepted to, no question is presented for review on appeal by a motion to modify the judgment.   p. 265.

2. PRINCIPAL AND SURETY.—*Fraud of Bank President in Procuring Loans from Bank.—Liability of Surety.*—On an action against a surety company on its bond conditioned on the faithful discharge by a bank president of the duties of his office, where the president and his brother controlled the majority of the shares of the capital stock of the bank and were directors, and through such domination the president procured loans for himself and his brother while both were insolvent, *held* that such action amounted to conversion rendering the surety on his bond, required by §3331 Burns 1914, §2686 R. S. 1881, liable, the directors pursuant to §3333 Burns 1914, §2688 R. S. 1881, making it the duty of the president to direct and superintend the affairs of the bank; and liability could not be avoided by the surety on the ground that, in the absence of a statute for-

bidding it, loans to officers of a bank involve no legal or moral turpitude.   p. 267.

3.  PRINCIPAL AND SURETY.—*President of Bank Procuring Personal Loan.—Liability of Surety.*—Where the president of a bank, who with his brother dominated its affairs and formerly owned a majority of the stock, but had secretly assigned it to procure a loan, induced the cashier, whom he was authorized by the bank's by-laws to control, to approve a loan to himself and brother, he cannot be deemed dealing with the bank at "arms length," as, under the circumstances, the request for a loan amounted to a mandate; and the president and his brother being insolvent, the surety on the former's bond is liable.   p. 267.

4.  PRINCIPAL AND SURETY.—*Loans Procured by Fraud of Bank President.—Liability of Surety.*—Where a president of a bank, with knowledge that both he and his brother were wholly insolvent, procured loans of the bank's funds to himself and his brother, the surety on the president's bond is liable, although the cashier was induced to acquiesce, as under the circumstances, the cashier, even if he knew of the falsity of the representation that the loans were proper, acted under coercion; it appearing that the president had concealed from the cashier the pledge of a large amount of his property, including practically all of the stock of the bank.   p. 267.

From Clinton Circuit Court; *Joseph Combs,* Judge.

Action by the State of Indiana, on the relation of Guy M. Booth, receiver of the Peoples State Bank of Arcadia, against the American Surety Company of New York and another.   From a judgment for relator, the defendants appeal.   *Affirmed.*

*Charles E. Henderson* and *Van Brunt & Harker,* for appellants.

*Holtzman & Coleman, J. F. & N. C. Neal* and *Sheridan & Gruber,* for appellee.

NICHOLS, J.—Action by appellee against appellants commenced in the Hamilton Circuit Court but venued to the Clinton Circuit Court from the judgment of last named court, this appeal.

There were four paragraphs of complaint, two on the original bond and two on the bond as continued for

another year, each paragraph charging breach of the bond as given and as continued. The bond was given by appellants as principal and surety to the Peoples State Bank of which appellee was receiver, hereinafter mentioned as the bank, conditioned for the faithful discharge of appellant Hinshaw's duties as president of such bank. Each paragraph charges a breach of the bond, in that, while acting as such president said Hinshaw did not honestly and faithfully discharge his duties as such president. The first and fourth paragraphs charge that he did not honestly and faithfully discharge his duties as such president, in that he was guilty of conversion, and also permitted conversion by his brother. The second and third paragraphs each charge that he did not honestly and faithfully discharge his duties as such president in that he caused a loan of the bank's money to be made to himself and to his brother at a time when they were both in failing circumstances, and when their liabilities were in excess of their assets, as said Hinshaws well knew.

It appears by the special finding of facts that: The Peoples State Bank of Arcadia was incorporated under the laws of the State of Indiana as a state bank with a capital stock of $25,000 July 25, 1909, and that it continued to operate as such until March 26, 1915, when being insolvent, it was closed by the auditor of state and a receiver appointed therefor. Appellant Hinshaw, hereinafter mentioned as Hinshaw, upon the organization of said bank until January 28, 1915, was the duly elected, qualified and acting president thereof. In 1911, said Hinshaw executed his bond for $2,000. The bond was later increased from $2,000 to $5,000. Appellant American Surety Company, hereinafter mentioned as surety company, was the surety thereon. By the by-laws of such bank it was provided that the president should at all times exercise general super-

vision and direction over the officers thereof, that he was empowered to employ attorneys or counsel and such subordinate officers, agents and employes as he might find necessary to transact the business; and that he should have general superintendence and direction of all other officers of said bank and should see that their duties were properly performed. On February 24, 1912, said Hinshaw was the president of said bank and his brother was the vice-president thereof, and each was a director, and one Hinesley was the cashier and a director thereof. On said date said Hinshaws executed to said bank their said notes in the sum of $2,700 due in thirty days, for which they received as consideration the sum of $2,700. Such note was renewed from time to time and finally on April 21, 1914, for $2,806.53, due in 120 days, with interest at six per cent. There was no subsequent renewal thereof and the note was never paid, but came into the hands of the receiver as part of the assets of the bank. Such receiver has made diligent efforts to collect the same but has been wholly unable so to do. On February 7, 1913, said brother drew his check payable to himself on said bank in the sum of $2,500, and negotiated the same at the Indiana State Bank of Indianapolis in due course of banking business. Such check was sent to said Peoples State Bank on February 11, 1913. During all of said time neither of said Hinshaws, as each well knew, had any funds to his credit in the Peoples State Bank nor any balance on deposit therein. On February 8, 1913, said Hinshaw, with the knowledge and consent of said brother, drew his check on said bank for $1,500 payable to himself and negotiated the same with the Indiana State Bank, and in due course of banking it was sent for payment to said Peoples State Bank on February 11, 1913. During all of said time said Hinshaw had no funds or balance to his credit therein as both said Hin-

shaws well knew. On February 10, 1913, said Hinshaws sent by mail from the city of Indianapolis to the cashier of said Peoples State Bank their note calling for the sum of $4,000, due in twenty days, to take care of said two checks, and each of said checks was paid by said bank and so stamped. Said $4,000 note was renewed from time to time and finally for $4,048.67 on April 21, 1914. The note was never paid because of the insolvency of the makers. At the time of the execution of the $2,700 note, February 24, 1912, the officers of said bank were said Hinshaw, president; Abraham H. Bowen, vice-president; John Hinesley, cashier; and said officers, together with said brother and one George Bowen constituted the board of directors. In April, 1912, the Bowens disposed of their stock and retired from said bank. Thereafter said Hinshaw was president, the brother, vice-president and said Hinesley, cashier. The three constituted the board of directors. Said Hinshaws were jointly interested in and promoters of a number of other enterprises, were in great straits for money, were heavily involved and unable to meet their outstanding obligations, and were each insolvent as well known to each of them during said time, each being in debt many thousands of dollars in excess of his assets and ability to pay, which fact was well known to each of them. Said Hinshaw did not honestly and faithfully discharge his duties as president of said bank in securing its funds as a loan to himself and his brother, and they each fraudulently took advantage of their official connection with said bank to procure money on their said checks. When the $2,700 note was given, and when said checks were drawn and paid, and when said original note for $4,000 was executed, and all the time thereafter until the appointment of a receiver, they each fraudulently concealed from said cashier the fact that each of them was insolvent, and fraudulently

led him to believe and he did in good faith believe that during all of said times each of them was solvent. Said Hinshaw individually and as president of said bank had full knowledge of his own and his brother's insolvency, and with such knowledge as such president he procured and induced said bank, and said cashier to accept said $2,700 note, and to deliver to said Hinshaws the said $2,700, of the funds of said bank, and also procured and. induced the payment of said checks, and the acceptance of the $4,000 note, and the said cashier believed in good faith during all of said time that each of said Hinshaws was solvent and was induced to make such loans by rep-·resentations and statements made that they were own-ers of ample property to make them entirely responsible.

Following the special finding of facts are conclusions of law, with judgment in favor of appellee in the sum of $4,445. There was no exception to any of the con-clusions of law. They therefore stand unchallenged as is admitted by appellant in its brief, and we therefore do not need to set them out in this opinion.

There is a motion by appellants to modify the judg-ment but as the conclusions of law have not been ex-cepted to, and the judgment strictly follows the conclusions of law, no question is presented by this motion. *Maynard* v. *Waidlich* (1901), 156 Ind. 562, 60 N. E. 348. This leaves for our considera-tion the action of the court in overruling appellants' motion for a new trial, the grounds for which, properly assigned and discussed are (a) The decision of the court is not sustained by sufficient evidence, (b) the decision of the court is contrary to law.

The foregoing finding of facts are a fair interpreta-tion of the evidence in the cause. There is some evi-dence to support each finding. If we needed other evidentiary facts on which to base our decision we might add to what the court has found that the capital

stock of the Peoples State Bank was $25,000, consisting of 250 shares of $100 each. Of these shares Hinshaw was the owner of sixty-seven, his brother of sixty-seven, and the cashier, Hinesley of fifty shares. At the organization of the bank and thereafter until April, 1912, there were five directors consisting of the Hinshaws, Hinesley the cashier, and George Bowen, and A. H. Bowen, both of Noblesville, each of the Bowens owning thirty-three shares. By this it appears that all of the stockholders of the bank were directors therein and that the Hinshaws owned the controlling interest. But on said April, 1912, the Bowens disposed of their stock and then there were but three directors, consisting of the Hinshaws and the cashier.

By §3331 Burns 1914, §2686 R. S. 1881, it is provided that the directors shall elect one of their number president and shall also elect or appoint the cashier; that the president and the cashier shall each take an oath or affirmation that he will faithfully and honestly discharge his duties. Provision is also made for a separate bond by each of such officers conditioned for the faithful and honest discharge of his duties.

Section 3333 Burns 1914, §2688 R. S. 1881, *inter alia*, authorized the directors to make and establish from time to time such by-laws as may be deemed proper for the regulation of the transaction of the business of the bank. Section 3334 Burns 1914, §2689 R. S. 1881, provides that no person owning fewer than five shares of the capital stock shall be eligible as a director, and that when any director shall transfer his stock and thereby become the owner of less than five shares, his office as director shall from the date of the transfer terminate. As the president is selected from the directors it follows that one holding fewer than five shares of stock cannot hold the office of president. By the authority of §3333, *supra*, the board of directors of said

bank adopted by-laws defining the duties of the president of the bank as set out by the court in the findings of fact. These by-laws conferred upon him the right and made it his affirmative duty to direct and superintend, thereby making the cashier subject to his direction and control.

It is argued by appellant surety company that in the absence of a statute forbidding loans to officers of a bank there is no moral or legal turpitude involved

2. in a loan gotten from the bank by one who is an officer thereof, and especially where such loan is with the knowledge and consent of the directors. This is a safe proposition for appellant to make and one in which we can concur under normal conditions. The mere fact that the bank saw fit in good faith to loan its money to an officer and that it did loan its money to such officer is not necessarily a ground for challenge of the management of its banking business; but if the transaction is not a *bona fide* transaction, and if it is infected with a wrong of the officer to whom the loan is negotiated a different condition then presents itself. If, through the form of a loan or the form of any other legitimate transaction with the bank, the officer wrongfully obtains its money, the form or manner in which he obtains it, whether by check or as a loan, can make no difference. The fact that he takes the money and holds it under such circumstances constitutes a conversion. *Meyer* v. *Doherty* (1907), 133 Wis. 398, 13 L. R. A. (N. S.) 247, 126 Am. St. 967.

In January, 1912, the Hinshaws assigned, set over, and delivered to the Hamilton Trust Company 124 of their shares of the capital stock of said bank, to-

3, 4. gether with other property and their stocks and bonds in divers other institutions, to secure a loan of $50,000. They retained but five shares each, which was the amount that each was required to have

in order to serve as director and officer of the bank involved. This assignment was kept entirely secret from the cashier of the bank involved, and he had no knowledge of it until he learned it in the court room in 1915. It was after the assignment of the stock was made that the transaction involved in this litigation occurred, and during all of said time, when occasion required, the Hinshaws were voting 134 shares or a majority of the capital stock of such bank. It is argued by appellant surety company that appellant Hinshaw was not dealing with the bank as its president but that he was dealing with it at "arms length." We cannot concur in this argument. At the time of the transactions, the Hinshaws owned the majority of the stock and constituted a majority of the board of directors, and were in position at any time to discharge the cashier. Under such circumstances the respective notes presented by them to the cashier with their indorsement and approval, and with the request for a loan, amounted to a mandate to the cashier. All the facts involved were well known to said Hinshaw, not only as an individual but as a director, and as the president of the bank. The evidence conclusively shows that at the time of such transactions the Hinshaws were insolvent, and that such insolvency was known to each and both of them. If Hinshaw had knowledge of such insolvency as an individual, he also knew it as the president of the bank, and when with such knowledge he not only stood by while said loans were made, but affirmatively consented thereto, requested the same, and accepted the proceeds thereof, he was guilty as such officer of a fraud upon the bank that he had taken an oath and given bond faithfully and honestly to serve. His active participation in the transaction amounted to a solemn representation to the cashier that it was good banking business to pay the money of the bank to the makers

of the notes, just as much so, as if he had made a verbal or written statement to that effect. Even if the cashier of the bank had known that such representations were false and fraudulent he was placed in a situation in which he was certainly not a free agent, for the demands made upon him to act in the way in which he did were made by the president, and the vice-president, by the majority of the directors of the bank, and by the stockholders representing the majority of the stock. His acts were under coercion, and the money obtained under such circumstances by the president thereof for his own use and benefit and for the use and benefit of his brother, both of whom he knew to be insolvent, constituted a conversion of the funds of the bank and a breach of the faithful performance of his duty as averred in the complaint. We are fully convinced that the decision of the court is sustained by sufficient evidence, and that it is not contrary to law.

The judgment is affirmed.

Dausman, J., dissents.