NATIONAL SURETY COMPANY *v.* STATE OF INDIANA, EX REL. RATHBUN.

[No. 12,830. Filed March 29, 1928. Rehearing denied June 27, 1928. Transfer denied October 31, 1929.]

*Moses B. Lairy, Frederick VanNuys, Edward E. Gates,*
*George M. Barnard, Julian C. Ralston* and *Raymond L.*
*Walker,* for appellant.

. *Donald Fraser, William H. Isham, Will Isham,*
*Charles H. Stuart, Allison E. Stuart* and *Dan W. Simms,*
for appellee.

THOMPSON, J.—This was an action by appellee to
recover from appellant on a surety bond executed by
Warren T. McCray as principal, and the National
Surety Company as surety, conditioned that said
McCray faithfully discharge his duties as president of
the Discount and Deposit State Bank of Kentland,
Indiana.

The amended complaint alleged, in substance, that
Warren T. McCray, while president of said bank, dis-
counted at said bank three·notes, one in the name of
the Warren T. McCray Realty Company for $15,000,
another in the name of the Orchard Lake Stock Farm
for $15,000, and another in the name of the McCray
Grain Company for $10,000, each note being payable to

Warren T. McCray; that said companies had no existence in fact, and that said notes were, in reality, notes of said Warren T. McCray and were of no value; that said McCray, at the time the notes were discounted, was wholly insolvent, and that said notes were known by McCray to be of no value; that, in violation of the rules of said bank, said notes were discounted without first submitting them to and securing the approval in writing of three other directors of the bank; that said sums of money totaling $40,000, were abstracted from the funds of said bank by said McCray while he was acting as president thereof, and that none of said money had been repaid. A copy of the bond, marked "Exhibit A," was attached to and made a part of the complaint.

Appellant answered the amended complaint by a general denial and by affirmative second, third and fourth paragraphs. The second paragraph, in answer to that part of the amended complaint which alleged liability for the loss on the two $15,000 notes discounted on or about July 6, 1922, admitted the execution of the bond sued on, conditioned on the honest and faithful performance by Warren T. McCray of his duties as president of said bank, but alleged that the bond was executed as surety for Warren T. McCray and not otherwise; that said bond contained the following condition: "The employer shall give written notice to the Surety by registered mail directed to the Home office of the Surety in the city of New York, State of New York, of any loss within twenty (20) days after discovery of the same by the Employer, caused by the acts of the Employee, and after the discovery of actual loss, the liability of the Surety shall terminate as to any further acts of the Employee"; that the $10,000 note of the McCray Grain Company was discounted by said bank on October 27, 1919, approved by the directors at their next meeting, and thereafter renewed at various intervals until the

bank closed on October 13, 1923; that the directors of said bank knew, long before the two $15,000 notes were discounted, that the $10,000 note of the McCray Grain Company was worthless, and that, had appellant been given the 20 days' notice provided for in the bond, they would have cancelled said bond and thus escaped liability on the two $15,000 notes.

The third paragraph of answer averred that said bond sued on contained the following condition: "That if there is a violation of the conditions of this bond upon the part of the employee and a loss occurs to the employer, such loss must be discovered and suit filed to recover the same against this surety within six (6) months after the expiration of this bond and within six (6) months after death, dismissal or retirement of the employee herein from the service of the employer, provided such death, dismissal or retirement occur within the term of this bond, and provided that the employer shall, upon request of the surety, made within ten (10) days after the notice of loss has been given, furnish to the surety, within sixty (60) days, a full itemized statement of the loss discovered, such statement to be verified under oath of the employer or an officer or agent of the employer showing:

"(a) Detailed statement in gross of money, securities or property lost, with description and value thereof.

"(b) Specific items and amounts of loss with dates thereof, if known, claimed under this bond.

"(c) The date of discovery of such losses.

"(d) The amount and description of any other suretyship or security, if any, against loss by said employee, with names, residences and places of business of any other indemnitors or sureties.

"(e) The sums and credits due said employee from the employer for salary or otherwise, and the amount if any recovered, received, claimed or to be claimed from others by reason of such loss.

"(f) The date when the employee retires or was dismissed from the employer's service, or if the employee is dead, the date of his death; and the surety shall have ninety (90) days after receiving such itemized statements in which to investigate and pay said loss before suit."

That Warren T. McCray retired from the office of president of said bank on August 21, 1923, and was not employed by said bank thereafter; that said retirement occurred within the last continuance of the bond, and that no notice was given appellant of said loss, nor was suit brought to recover against the surety within six months after McCray's retirement from the presidency of said bank; that a receiver was appointed for said bank on October 13, 1923, and this suit was not commenced by him until October 13, 1924; that because of the failure of the officers of the bank to give notice of said losses within 20 days after each of them occurred, appellant was prevented from requesting of and receiving from said bank an itemized statement as to said losses as contemplated by the provisions of condition number three of said bond above set out, and appellant was thereby deprived of its right and opportunity to verify said alleged losses and to obtain from the principal obligor on said bond such payment or security as it might otherwise have obtained to indemnify it against the several losses specified in the amended complaint; that the time limit in the contract, in which suit may be brought thereunder against the surety, expired before the action was brought, and appellee should not be permitted to recover as to any of the claims alleged in the amended complaint.

The fourth paragraph of answer alleged that the bond sued on contained the following further condition: "That the surety shall not be liable for any error of

judgment or injudicious exercise of discretion on the part of the employee or for any loss which may be sustained by the employer by reason of any act done or left undone by following the customary course of business or usage of the employer, or in obedience to the direction, instruction, or authorization of the President, Vice-president, or other officer, or Board of Directors"; that all of the notes described in the amended complaint were discounted by said bank and approved by the directors of said bank in the customary course of the bank's business.

Appellee filed a reply specifically denying the allegations of the second, third and fourth paragraphs of answer, and also alleging that the provisions and limitations of the bond sued on were contrary to and in violation of the statute providing for the execution of said bond.

After the conclusion of the evidence, both appellant and appellee tendered instructions and filed interrogatories. There was a verdict in favor of appellee for $5,387.50, with interest and costs. Appellant's motion for a new trial was overruled, to which ruling of the court appellant excepted, and judgment was rendered on said verdict.

The error assigned is the action of the court in overruling appellant's motion for a new trial.

Appellant, in its argument in support of its motion for a new trial, discusses 12 alleged errors, exclusive of those relating to the bond. The first two are general; the next two pertain to the admissibility of certain evidence; and the remaining eight pertain to the giving of, and the refusal to give, certain instructions. Appellant suggests that in said 12 alleged errors there are involved about three legal questions which the court decided erroneously. It is suggested that if it is determined that McCray, in negotiating said loans, was, in

fact, negotiating with the bank represented by duly authorized officers adequately empowered to represent the bank's side of the negotiations, and that, during the negotiations, McCray was acting only on his side of the negotiations solely as an adversary party and not in the course of his employment as president, then there was error as to each of said 12 particulars above mentioned because the bond sued upon made appellent liable only for a bad faith and dishonest failure to discharge duties in the course of his employment as president of the bank, and that the bond cannot be extended so as to cover acts solely in the course of the conduct of his personal affairs; that if, on the other hand, it is determined that McCray, in these negotiations, was acting on both sides of the negotiations, and that, while acting on the bank's side, he failed to honestly and faithfully discharge the duty of exacting a strict compliance of the rule requiring the indorsed approval of three other directors on the paper which he was presenting for discount, then it must be determined what, if any, effect the ratification, approval and adoption by the board of directors of his act in dispensing with this rule had upon such act; that if said ratification and approval had the usual effect of making the act the act of the bank, of removing from the act all taint of bad faith and dishonesty and of releasing McCray from any legal liability for the acts which were ratified, approved and adopted, then the judgment of the trial court must be reversed, because no instruction given by the court can be reconciled with such effect of ratification, and the instructions tendered by appellant and refused by the court would have instructed the jury as to such legal effect of ratification.

Appellant further suggests that if it is right as to the legal effect of ratification, and if it is determined, as a matter of law and not fact, that McCray was acting

on both sides of the negotiations which resulted in the discounting of the notes in controversy, that, while acting on the bank's side, he was acting dishonestly and in bad faith in failing to exact strict observance of an alleged rule which required the indorsed approval of three other directors on his paper, and if it is further determined that it was not within the power of the bank, acting through its board of directors, to effectually dispense with and waive the observance of the rule, or to ratify the acts of McCray, then, and then only, can the judgment of the trial court be affirmed. It is appellant's contention that McCray, in the negotiations, was dealing with the bank just as any other person would have dealt with it—entirely outside of the role of an officer; that he had been Governor of the state for some time prior to said negotiations, and had been living in the city of Indianapolis; that he had not been active as president of the bank, and was president in name only; that he requested the loans, leaving the bank free to either grant or refuse his request; that he did not order the loans made, but requested it, and it being a request, the matter of granting it was a matter of discretion; that the evidence does not show that McCray ever attempted, as an officer, to influence the judgment of the bank's officers; that McCray clearly assumed the role of an adversary party to the bank and dealt as any other person with the duly authorized officers of the bank adequately empowered to represent the bank's side of the contract, and, as such, his negotiations stand on a par with the negotiations of any other person not an officer or agent of the bank; that the bank, through its board of directors, could at any time it saw fit waive and dispense with the rule which required any officer or director of said bank to first secure the written approval of three other directors before obtaining a loan on his note from said bank; that it was not a rule imposed by

the stockholders, and that it was not imposed by statute, so that the board of directors could do anything with the rule which they saw fit, and, having waived its enforcement, the situation was the same as though it had not been in existence. With reference to the bond, it is contended by appellant that the various limiting clauses contained therein were legal, and that appellant's liability is limited thereby, while appellee contends that the bond was an official one, fixed by statute, and that said limitations were void.

The main point in dispute in this case is whether or not a president of a bank may lay aside his duties and obligations as such president and deal with the bank at arm's length the same as any individual might do who had no official connection with said bank. The appellant contends that McCray, while president of the bank, could deal with said bank in such manner as an adversary party, and that, in so doing, his acts would be outside the course of his employment, and that the surety on his bond would not be liable.

The president or any other official of a bank holds his position, presumably, for the best interests of the institution and its stockholders. His first duty is to the bank, and any act which he performs, in which the bank is an interested party, must be considered as being in the course of his employment. It would be decidedly unethical and opposed to the public welfare to hold otherwise and to allow such official to throw into the discard his duties and obligations as such president or official whenever he desired to have personal dealings with the institution. When the president of a bank borrows money from his bank, whatever knowledge he has as an individual relative to the business in hand, and affecting the interest of the bank, he possesses as an official, and if he withholds information from the other officials with whom he deals,

which is vital to the interest of the bank, he violates his bond for the faithful discharge of his duties. An official of a bank may have personal dealings with said bank through its duly authorized agents capable of representing it, but his dealings must be above reproach and free from fraud, and this necessitates the keeping in mind and observance of his official obligations to the bank in preference to his own personal interests. Otherwise, no bank would be safe from the depredations of an unprincipled and influential official. In the case of *Wainwright v. P. H. & F. M. Roots Co.* (1912), 176 Ind. 682, 97 N. E. 8, the court said: "If the agent act for himself and his principal at the same time in a matter connected with the relation between them, his conduct is constructively fraudulent, and if a contract be the result it is voidable at the election of the principal. It is presumed, where he is thus potential on both sides of the contract, that self interest will overcome his fidelity to his principal to his own benefit and his principal's hurt. . . . So the general rule seems to be that where the contract between a corporation and one of its directors is made on the part of the company by a majority of the directors acting for its interests honestly and in good faith, and with full knowledge of the matter, or by another independent agent with authority to act for it, such contract is not even voidable, except for unfairness or fraud, for the presence of which the courts will closely scrutinize the contract."

In the case of *American Surety Co.* v. *State, ex rel.* (1920), 76 Ind. App. 260, 127 N. E. 844, the court, at p. 267, said: "It is argued by appellant surety company that in the absence of a statute forbidding loans to officers of a bank there is no moral or legal turpitude involved in a loan gotten from the bank by one who is an officer thereof, and especially where such loan is with the knowledge and consent of the directors. This

is a safe proposition for appellant to make and one in which we can concur under normal conditions. The mere fact that the bank saw fit in good faith to loan its money to an officer and that it did loan its money to such officer is not necessarily a ground for challenge of the management of its banking business; but if the transaction is not a *bona fide* transaction, and if it is infected with a wrong of the officer to whom the loan is negotiated, a different condition then presents itself. If, through the form of a loan or the form of any other legitimate transaction with the bank, the officer wrongfully obtains its money, the form or manner in which he obtains it, whether by check or as a loan, can make no difference. The fact that he takes the money and holds it under such circumstances constitutes a conversion. *Meyer* v. *Doherty* (1907), 133 Wis. 398, 13 L. R. A. (N. S.) 247, 126 Am. St. 967."

In the case at bar, the question as to whether or not McCray's dealings in negotiating the discount of said notes were fraudulent and unfair was submitted as a question of fact. The jury found that McCray knew he was insolvent at the time the notes were discounted and the money received by him, that he withheld such fact from the bank's agents and that, in so doing, he acted fraudulently. Appellant's contention that the fact that McCray, for some time prior to the discounting of the notes, had been Governor of Indiana, had resided in Indianapolis, and was not actively engaged in the transaction of the bank's business would place him in a different position, is not well taken. The fact remains that he was the bank's official president, also a member of the loan and discount committee, and, as such, was liable on his bond for the faithful and honest discharge of his duties. The subsequent so-called ratification of said transactions by the board of directors was not binding and did not relieve

the surety. The evidence shows, and the jury found, that McCray acted fraudulently in withholding vital information regarding his solvency, and that the board of directors, at the time of said subsequent ratification, was under the impression that McCray was solvent. So we may presume that the ratification was a result of McCray's unfaithful act in dealing with the bank. Furthermore, the notes were discounted and the money obtained in violation of the following rule of the bank: "That no officer of said bank shall be permitted tc obtain money from said bank upon his note or paper without first having submitted such note or paper to and procuring the written approval endorsed thereon of at least three other directors of said bank." This rule or by-law is based upon §2481 Burns 1926 statutes, which reads as follows: "Whoever, being president, director, cashier, teller, clerk, officer or employee of any incorporated bank, or of any firm, corporation, person or association doing a banking business, shall, in any way, obtain, as a borrower, any of the funds of such bank, firm, corporation, person or association doing a banking business without first executing his note or other evidence of debt therefor, bearing the written consent thereto of the board of directors of any such incorporated bank, or the manager or managers of any other such firm, corporation, person or association doing a banking business, indorsed on such note or other evidence of debt, shall be deemed guilty of a felony and, on conviction, shall be imprisoned in the State Prison not less than two years nor more than fourteen years, and be fined in double the amount so received." The notes discounted by McCray were not indorsed or approved by three other directors before they were presented to the cashier for discount, and the money received thereon. They were approved at a later date, at the next meeting of the board of directors. It is apparent that such action of the

board of directors in attempting to thus approve the notes was itself a violation of the spirit of the rule of the bank and the statute, and such ratification could be of no effect. Even though the rule had been in force merely as a precaution of that particular bank and not as a result of the statute governing the discounting of notes by bank officials, this ratification would still have been of no force. Rules governing banking procedure and the method to be followed by its officials in their personal dealings with their bank are there for a good purpose, and it would not be logical to say that the by-law or rule here in controversy could be automatically canceled after the very contingency had arisen against which the rule was created to guard the bank.

We do not deem it necessary to go into a detailed discussion of the bond in this case. Bonds of this nature are fully discussed in the case of *The United States Fidelity, etc., Co.* v. *Poetker* (1913), 180 Ind. 255, 102 N. E. 372, and other cases therein cited. It was there held that such bonds are official bonds required by statute. The statute prescribes what conditions such bonds shall contain, and any limiting clauses written therein are void.

There was no error in the giving of certain instructions and the refusal of the court to give certain others, and the jury was fully and fairly instructed as to the law in the case.

We hold that there is sufficient evidence to sustain the verdict, and, finding no reversible error, the judgment is affirmed.